The STATE of Texas, Appellant,

v.

Charles William STOLTE, Appellee.

No. 2–98–491–CR.

Court of Appeals of Texas, Fort Worth.

April 8, 1999.

338

Tim Curry, Criminal District Attorney, Charles Mallin, John A. Stride, Shawn Paschall, Elizabeth C. Jack, and Phelesa Guy, Assistant District Attorneys, Fort Worth, for Appellant.

Law Office of David E. Williams and David E. Williams, Fort Worth, for Appellee.

Before Panel B: CAYCE, C.J.; DAY and RICHARDS, JJ.

## OPINION

SAM J. DAY, Justice.

Appellee Charles William Stolte was charged with driving while intoxicated (DWI). Prior to trial, Stolte filed a motion to suppress evidence, alleging that the search that led to his arrest was conducted without probable cause or reasonable suspicion, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article I, section 9 of the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure.[1] After a hearing on the motion, the trial court found that the arresting officer lacked reasonable suspicion for the stop and granted the motion to suppress.

In seven points, the State asserts that the trial court erred in its application of the United States and Texas Constitutions, in its application of article 38.23 and Chapter 14 of the Texas Code of Criminal Procedure,[2] in failing to follow this court's prior decisions governing reasonable suspicion, and in effectively precluding a police officer from making an investigative stop based on an anonymous caller's tip unless the officer first corroborates the suspect's illegal conduct.

Because the trial court erred in granting Stolte's motion to suppress, we sustain the State's points on appeal and reverse the trial court's order.

## STANDARD OF REVIEW

█ Historically, a trial court's decision involving a motion to suppress has been reviewed under an abuse of discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). However, where the underlying facts are undisputed, questions regarding the existence of reasonable suspicion and probable cause must now be reviewed *de novo*. *See Guzman v. State*, 955 S.W.2d 85, 87, 89 (Tex.Crim.App.1997). This is because the trial court is not in an appreciably better position than a reviewing court to apply the law to the uncontroverted facts of a case. *See id.* at 87. Because the facts before us are not in dispute, we review this case *de novo*.

## BACKGROUND

On appeal, Stolte argues that an officer may not make an investigative stop based solely on an anonymous call that does not relate any of the details on which the caller based his opinion, unless the officer personally corroborates the report with other matters within the officer's knowledge. Stolte argues that because the officer in this case did not see Stolte do anything out of the ordinary before pulling him over, the officer lacked reasonable suspicion to justify the stop.

At the hearing on Stolte's motion to suppress, Bedford Police Officer Michael Kratky testified that on December 9, 1997, his dispatcher advised him that a cell phone caller had reported a suspected DWI. The dispatcher told Kratky that the suspect was traveling westbound on Highway 183 and was exiting at Bedford Road in a red and tan Chevrolet pickup, license plate number BV4–358. The dispatcher also told Kratky that the caller was following the suspect.

When Kratky arrived at the Bedford Road exit, he saw the pickup described by the dispatcher make a U-turn under the freeway. Kratky turned on his emergency lights and siren and stopped the pickup,

---

1. Article 38.23 provides that evidence obtained in violation of either the constitutions or laws of the United States or the State of Texas is inadmissible against the accused in any criminal case. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1999).

2. Chapter 14 of the code of criminal procedure governs arrests made without a warrant. TEX.CODE CRIM. PROC. ANN. arts. 14.01–14.06 (Vernon 1977 and Supp.1999).

which was driven by Stolte. Kratky testified that when he approached Stolte, he smelled the odor of alcohol coming from the vehicle and Stolte's breath. Stolte's eyes were watery and bloodshot and his speech was slurred. After Stolte failed three field sobriety tests, Kratky concluded that he was intoxicated and arrested him for DWI.

Kratky testified that in cases such as this, the dispatcher instructs the caller to stop behind the investigating officer's vehicle and wait to be interviewed. Kratky said that the caller, who was later identified as David Cowell, followed the dispatcher's instructions and stopped behind Kratky's patrol car. Kratky said that he did not know Cowell before this incident.

Cowell also testified at the motion to suppress hearing. He said that on December 9, 1997, he was traveling home on Highway 360 from his job as an air traffic control supervisor. As Cowell exited Highway 360 to westbound Highway 183, he noticed that traffic in the three left lanes was braking. He looked ahead to see if there was a wreck and noticed a pickup in the center of the three lanes going slower than the posted speed limit. Cowell said drivers were slowing down to get around the pickup, which he saw weave in and out of its lane seven or eight times. At one point, the pickup's driver forced a passing car completely out of its lane and onto the shoulder.

Cowell waited until the pickup veered to the right and then passed it on its left. He testified that the pickup was a two-toned orange and tan Chevrolet. Believing that the pickup's driver was a danger to himself as well as other drivers, Cowell noted the license plate number as he passed and called 911. He reached the Euless Police Department, which trans-

ferred him to the Bedford Police Department. Cowell told the dispatcher that he had seen a driver who he suspected was intoxicated traveling westbound on Highway 183. Cowell gave her a description of the pickup and the license plate number. When Cowell said he was still watching the vehicle, the dispatcher instructed him to keep her updated on the pickup's location. Cowell testified that as he passed different streets or businesses, he informed the dispatcher. Noticing that the pickup's driver seemed to be deliberately staying in the right-hand lane, Cowell correctly guessed that Stolte was about to exit at Bedford Road. Cowell pulled into the lane ahead of Stolte and exited before him. As Cowell pulled up to the stop light, he saw Stolte exit, make a U-turn, and go under the freeway, followed by a patrol car. Cowell circled the block and parked behind the patrol car.

Cowell testified that except for a few breaks when the dispatcher was talking to Kratky, he was constantly updating her on Stolte's location. Cowell also said he had worked in law enforcement from 1978 to 1981, but he did not inform the dispatcher of that fact.

## INVESTIGATIVE DETENTION

■ The issue in this case is whether the information relayed from Cowell to Kratky via a police dispatcher was legally sufficient to justify the investigative detention that led to Stolte's arrest.[3] Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See State v. Sailo*, 910 S.W.2d 184, 187 (Tex.App.—Fort Worth 1995, pet. ref'd). The officer must have specific articulable

---

**3.** The standard for investigative stops is the same under the Texas Constitution as under the United States Constitution. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997) (citing *Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992)); *compare*

*Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim. App.1998) (holding that article I, section 9 of Texas Constitution does not offer greater protection than Fourth Amendment to United States Constitution and may offer less protection).

facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *See id.* at 187–88 (*citing Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). The officer must have a reasonable suspicion that some activity out of the ordinary has occurred or is occurring, some suggestion to connect the person detained to the unusual activity, and some indication that the activity is related to a crime. *See State v. Adkins,* 829 S.W.2d 900, 901 (Tex.App.—Fort Worth 1992, pet. ref'd). The facts and circumstances that may provide a reasonable suspicion of criminal activity need not themselves be criminal in nature, but may include facts that in some way would increase the likelihood of the presence or occurrence of criminal activity. *See Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991); *Rhodes v. State,* 913 S.W.2d 242, 247 (Tex. App.—Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim.App.), *cert. denied;* —— U.S. ——, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997).

■ The reasonableness of a given detention will turn on the totality of the circumstances in that particular case. *See Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim.App.1997); *Sailo,* 910 S.W.2d at 188. A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *See Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See id.* The informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of the caller's report. *See id.; Adkins,* 829 S.W.2d at 901. "Reasonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability." *White,* 496 U.S. at 330, 110 S.Ct. at 2416. Both factors—the quality and quantity—must be taken into account in determining whether a detention is reasonable. *See id.; Sailo,* 910 S.W.2d at 188. "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *See White,* 496 U.S. at 330, 110 S.Ct. at 2416.

■ Corroboration by the law enforcement officer of any information related by the informant may increase the reliability of the information. *See Sailo,* 910 S.W.2d at 188. However, "corroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *See id.* at 189. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *See id.*

■ Where the reliability of the information is increased, less corroboration is necessary. *See White,* 496 U.S. at 330, 110 S.Ct. at 2416. A detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. *See Illinois v. Gates,* 462 U.S. 213, 234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). So does the fact that the person put himself in a position to be held accountable for his intervention. *See United States v. Sierra–Hernandez,* 581 F.2d 760, 763 (9 th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). Furthermore, a person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring. *See id.* at 763 n. 1; *Sailo,* 910 S.W.2d at 188.

The State compares this case to *Glover v. State*, in which the appellant complained that the police officer who stopped him lacked sufficient information to justify the investigative detention. *See* 870 S.W.2d 198, 200 (Tex.App.—Fort Worth 1994, pet. ref'd). The officer learned from a police broadcast that a medical technician in an ambulance had reported a DWI suspect driving a Corvette, license number FSP–89X, traveling in the officer's direction. *Id.* at 199. The officer spotted a white Corvette being followed by an ambulance, gave chase, and pulled over the driver of the Corvette. *Id.* The ambulance continued on. *Id.* At the suppression hearing, the officer testified that he did not see the appellant driving erratically and stopped him only on the basis of the police broadcast. *Id.*

On appeal, we held that the officer had reasonable suspicion for the stop, noting that because the officer could be confident of learning the identity of the medical technician and because the medical technician could reasonably anticipate that his identity would be available to the police, this tip had sufficient indicia of reliability. *Id.* at 200. As a result, under the totality of the circumstances, the information the officer received from the broadcast was reliable and established reasonable suspicion to detain the appellant. *Id.*

■ In this case, Kratky testified that his dispatcher advised him that a cellular phone caller had reported a possible DWI and was following the suspect. The dispatcher reported that the suspect was traveling westbound on Highway 183 in a red and tan Chevrolet pickup, license plate number BV4–358, and was about to exit at Bedford Road. As Kratky approached Bedford Road, he confirmed that a westbound pickup matching the dispatcher's description and license plate number was exiting at Bedford Road. Because the caller had given the license plate number, a specific description of the vehicle, and was continually updating the dispatcher on the location of the suspect's vehicle, Kratky had every reason to believe that he was detaining the right person. *Compare Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim.App.1984) (holding that officer lacked reasonable suspicion to detain driver of vehicle at location of reported shooting that matched anonymous caller's description; officer could not be sure he had the right vehicle because there was no evidence regarding how much time had passed since shooting).

Moreover, although he did not know the citizen-informant's name, Kratky testified that in cases like this, it is standard procedure for the dispatcher to instruct callers to pull in behind the patrol car and wait to be contacted by an officer. Thus, Kratky knew that he could learn the identity of the citizen-informant who had called in the report. Likewise, Cowell undoubtedly knew that by calling the police and stopping at the scene, he was putting himself in a position to be held accountable for his intervention. *See Sailo*, 910 S.W.2d at 188. In addition, Cowell told the dispatcher that he was personally watching Stolte, which entitled the police to give greater weight to the tip. *See id.; Adkins*, 829 S.W.2d at 901. Kratky also knew that the concerned citizen had remained on his cellular phone to track and report the suspect's location, which lent credence to the caller's veracity. These factors all increased the reliability of the information that Kratky received from his dispatcher. *See Sailo*, 910 S.W.2d at 188; *Glover*, 870 S.W.2d at 200.

■ As much as a bright-line rule would be desirable in determining the reasonableness of an investigative detention, common sense and ordinary human experience must govern over rigid criteria. *See Rhodes*, 945 S.W.2d at 118. Each case must be judged from the perspective of a reasonable officer *at the time of the detention*, rather than with the advantage of hindsight. *Id.* As a result, this inquiry would not be complete without also considering the urgency of the particular situation.

 

In this instance, the suspected offense involved an immediate threat to the public safety. Kratky, a 10–year veteran of the police force, was obviously aware of the danger that Stolte posed to both himself and other drivers if Cowell's suspicions about Stolte's inebriated state were accurate. Acting on the information he had at the time of the detention, without the benefit of hindsight, it was reasonable for Kratky to suspect that Stolte might be driving while intoxicated and to conclude that a brief detention was warranted to further investigate. Thus, in light of the totality of the circumstances, including both the important public and private interests involved, we hold that Kratky was justified in initiating an investigatory stop when he confirmed that a pickup was located where the informant indicated, which matched the description and license plate given.[4] *Cf. Hulit,* 982 S.W.2d at 438 (holding that, in light of public and private interests at stake, police acted reasonably in asking appellant to step out of vehicle to determine if he needed assistance, after he was discovered unconscious and slumped in his car on public highway).

## CONCLUSION

After considering the totality of the circumstances, we hold that the information from the unknown citizen-informant was sufficiently reliable to justify the investigative stop and had been adequately corroborated by Kratky at the time of the detention. The investigative stop thus did not violate the state or federal constitutions, and the admission of evidence that was obtained from that detention did not contravene article 38.23 of the code of criminal procedure. Because the trial court erred in its application of the law to the facts of this case, Stolte's motion to suppress should have been overruled. The State's seven points on appeal are sustained.

The trial court's order is reversed and this cause is remanded for trial.

**4.** Indeed, it would be wholly *unreasonable,* under these facts, to require a police officer to "corroborate" an informant's tip by waiting for the suspect to swerve out of his lane or otherwise jeopardize the safety of other drivers.