COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-454-CR
 
CHARLES EDWARD PIPKIN
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                             
    STATE
------------
FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
------------
OPINION
------------
I. Introduction
A jury convicted Appellant Charles
Edward Pipkin of the offense of possession of a controlled substance. After
finding two enhancement allegations to be true, the jury assessed punishment at
twenty years' confinement. In one issue, Appellant complains that the trial
court erred by not granting his motion to suppress evidence, in violation of his
rights under the United States Constitution, Texas Constitution, and article
38.23 of the code of criminal procedure. We will affirm.
II. Motion to
Suppress
During the State's
direct-examination of Dale Binkert, an officer with the Denton Police
Department, Appellant reurged his previously filed motion to suppress evidence,
alleging that the detention that led to his arrest and the search and seizure of
items within his vehicle was conducted without reasonable suspicion. After
Appellant's voir dire of Officer Binkert and brief argument, the trial court
denied Appellant's motion.
A. Standard of
Review
We review a trial court's ruling on
a motion to suppress evidence for an abuse of discretion. Carmouche v. State,
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Oles v. State, 993 S.W.2d
103, 106 (Tex. Crim. App. 1999). We will not overturn the trial court's ruling
unless its decision was outside the zone of reasonable disagreement. Salazar
v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). We afford almost
total deference to a trial court's determination of the historical facts that
the record supports, especially when the trial court's fact findings are based
upon an evaluation of credibility and demeanor. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). We afford the same amount of deference
to the trial court's rulings on mixed questions of law and fact, if the
resolution of those questions turns on an evaluation of credibility and
demeanor. Carmouche, 10 S.W.3d at 327; Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the trial court's
application of law to those facts in the determination of reasonable suspicion
and probable cause. Carmouche, 10 S.W.3d at 327; Guzman, 955
S.W.2d at 89.
B. Background
During Appellant's trial, the State
called Hugh Byrom to testify to a phone call he had made on March 5, 2002 to the
Denton Police Department. Byrom testified that on March 5, he was traveling
north from Dallas to Denton on Interstate 35-E in Corinth, Denton County, Texas.
He was driving in the inside fast lane, and he approached a dark blue sports
utility vehicle ("SUV") that was traveling at an "extremely
slow" pace. Byrom testified that he wrote down the SUV's license plate
number and called the Denton Police Department to report the slow moving SUV. As
Byrom spoke with the police department, he passed the SUV on the right hand side
to see why it was going so slowly. For approximately thirty seconds, Byrom
observed the driver steering the wheel with his knee and using his hands to
light a crack pipe. Byrom told the police that the driver appeared to be smoking
crack cocaine and driving around thirty-five to forty miles per hour when the
speed limit was seventy miles per hour.
Byrom testified that he gave the
police dispatcher the SUV's license plate number, its description, and its
location. He also gave the dispatcher his own name, address, cell phone number,
location, and destination. Byrom passed the blue SUV and continued north;
however, the Denton Police Department asked Byrom "to stand by on [his]
cell phone" as he passed the SUV.
The State then offered the
testimony of Officer Binkert, who testified that he was patrolling the area of
Colorado and Brinker Roads in Denton when he received the call from dispatch
advising him about an erratic driver on the freeway. Officer Binkert testified
that dispatch relayed to him information provided by a civilian. Dispatch
informed Officer Binkert that the civilian observed the driver of a blue SUV
with a specific license plate number driving erratically and smoking a crack
pipe. Officer Binkert then saw a dark blue Dodge Durango turning left from Loop
288 onto Colorado, and he realized that the license number matched the number
the civilian had reported to the police.
Officer Binkert began following the
SUV and pulled the car over. While Officer Binkert testified that he did not
recall seeing any traffic violations, when asked by Appellant's counsel what
suspicion he had to stop Appellant, Officer Binkert responded,

        
 I had the call from a citizen talking about the driving facts that that
 individual had observed on the highway, driving too slow. The fact that the --
 he stated -- he said the driver was smoking a crack pipe, in his own words. .
 . . So that's the reason I went ahead and stopped him.

Officer Binkert approached
Appellant and asked if he had been smoking, and Appellant told him that "he
had smoked a joint earlier." Officer Binkert testified that he asked
Appellant to get out of his car. Officer Binkert's backup officer, Samuel
Moseley, soon arrived and saw Appellant throw a rock of cocaine to the ground.
During a subsequent search of Appellant's SUV, the police found another rock of
cocaine, rolling papers, a glass tube, and a lighter in the center console of
the vehicle.
C. Investigative
Detention
The issue in this case is whether
the information relayed from Hugh Byrom to Officer Binkert via a police
dispatcher was sufficient to justify the investigative detention that led to
Appellant's arrest. Law enforcement officers may stop and briefly detain persons
suspected of criminal activity on less information than is constitutionally
required for probable cause to arrest. Terry v. Ohio, 392 U.S. 1, 22,
88 S. Ct. 1868, 1880 (1968). The same standards apply whether the person
detained is a pedestrian or is the occupant of an automobile. See Carmouche,
10 S.W.3d at 328 (citing Adams v. Williams, 407 U.S. 143, 145-46, 92 S.
Ct. 1921, 1922-23 (1972)) (holding that the "warrantless stop of the Camry
was constitutionally justified based upon the informant's tip"); Rhodes
v. State, 913 S.W.2d 242, 246 (Tex. App.--Fort Worth 1995) (recognizing
"[a]n occupant of an automobile is just as subject to an investigative
detention as is a pedestrian"), aff'd, 945 S.W.2d 115 (Tex. Crim.
App.), cert. denied, 522 U.S. 894 (1997).
To initiate an investigative stop,
the investigating officer must possess a reasonable suspicion based on specific
articulable facts that, in light of the officer's experience and general
knowledge, would lead the officer to the reasonable conclusion that criminal
activity is underway and the detained person is connected to the activity. King
v. State, 35 S.W.3d 740, 743 (Tex. App.--Houston [1st Dist.]
2000, no pet.). These facts must amount to more than a mere hunch or suspicion. Davis
v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).
The reasonableness of a given
detention will turn on the totality of the circumstances in that particular
case. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); State
v. Sailo, 910 S.W.2d 184, 188 (Tex. App.--Fort Worth 1995, pet. ref'd). A
tip by an unnamed informant of undisclosed reliability standing alone rarely
will establish the requisite level of suspicion necessary to justify an
investigative detention. Florida v. J.L., 529 U.S. 266, 270, 120 S. Ct.
1375, 1378 (2000); Alabama v. White, 496 U.S. 325, 329, 110 S. Ct.
2412, 2415-16 (1990). There are, however, some situations in which an anonymous
tip exhibits sufficient indicia of reliability to justify the detention. J.L.,
529 U.S. at 270, 120 S. Ct. at 1378.
There must be some further indicia
of reliability, some additional facts from which a police officer may reasonably
conclude that the tip is reliable and a detention is justified. White,
496 U.S. at 329, 110 S. Ct. at 2415-16. The informant's veracity, reliability,
and basis of knowledge are highly relevant in determining the value of the
caller's report. Id. at 328, 110 S. Ct. at 2415; State v. Adkins,
829 S.W.2d 900, 901 (Tex. App.--Fort Worth 1992, pet. ref'd). "Reasonable
suspicion . . . is dependent upon both the content of information possessed by
police and its degree of reliability." White, 496 U.S. at 330, 110
S. Ct. at 2416. Both factors-the quality and quantity-must be taken into account
in determining whether a detention is reasonable. Id.; Sailo,
910 S.W.2d at 188. "Thus, if a tip has a relatively low degree of
reliability, more information will be required to establish the requisite
quantum of suspicion than would be required if the tip were more reliable."
White, 496 U.S. at 330, 110 S. Ct. at 2416.
Corroboration by the law
enforcement officer of any information related by the informant may increase the
reliability of the information. Sailo, 910 S.W.2d at 188. "[C]orroboration"
in this sense does not mean that the officer must personally observe the conduct
that causes him to reasonably suspect that a crime is being, has been, or is
about to be committed. See id. at 189. Rather, corroboration refers to
whether the police officer, in light of the circumstances, confirms enough facts
to reasonably conclude that the information given to him is reliable and a
temporary detention is justified. Id.
Where the reliability of the
information is increased, less corroboration is necessary. State v. Stolte,
991 S.W.2d 336, 341 (Tex. App.--Fort Worth 1999, no pet.) (upholding detention
based on information from an unidentified person relayed to the investigating
officer by a police dispatcher); see also State v. Fudge, 42 S.W.3d
226, 232 (Tex. App.--Austin 2001, no pet.) (holding reasonable suspicion existed
to support detention based solely on cab driver's unsolicited personal report to
officer about erratic driving); State v. Garcia, 25 S.W.3d 908, 913-14
(Tex. App.--Houston [14th Dist.] 2000, no pet.) (upholding
investigative detention after individual "flagged down" officer in
parking lot and personally reported incident, even though informant later left
scene without identifying himself).
A detailed description of the
wrongdoing, along with a statement that the event was observed firsthand,
entitles an informant's tip to greater weight. Illinois v. Gates, 462
U.S. 213, 234, 103 S. Ct. 2317, 2330 (1983). A tip also deserves great weight if
the person put herself in a position to be held accountable for her
intervention. Stolte, 991 S.W.2d at 341 (citing United States v.
Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir.), cert. denied,
439 U.S. 936 (1978)). Furthermore, a person who is not connected with the police
or who is not a paid informant is considered inherently trustworthy when he
advises the police that he suspects criminal activity has occurred or is
occurring. Id.; Sailo, 910 S.W.2d at 188.
In this case, Appellant argues that
Officer Binkert's detention of Appellant was not supported by reasonable
suspicion because Byrom's tip lacked sufficient reliability to justify the
detention and because Officer Binkert made no independent corroboration of
Appellant driving slowly or using drugs. We have already addressed a similar
issue in Stolte. 991 S.W.2d at 342-43. In Stolte, we had to
decide whether a police officer was justified in initiating a traffic stop on
the sole basis of information received from a cellular phone caller without any
personal corroboration on the officer's part. Id. at 339. In Stolte,
a private citizen noticed a pickup truck driving erratically, forcing at least
one driver off the road onto the shoulder. Id. at 340. As he passed the
pickup, the citizen noted the license plate number and called 911. Id.
The caller gave the police dispatcher a description of the vehicle and the
license plate number and was told to keep the dispatcher updated on the pickup's
location. Id. As the caller and the suspected vehicle exited the
highway, the caller noticed that the vehicle was being stopped by a police
officer. Id. The caller then pulled in behind the police car. Id.
We held that all of these
circumstances taken together established that the information provided by the
cellular phone caller was sufficiently reliable to justify the investigative
stop. Id. at 343. We explained that the cellular caller proved his
reliability by: (1) calling the police and stopping at the scene, thereby
putting himself in a position to be held accountable; (2) telling the dispatcher
that he was personally watching the vehicle; (3) remaining on the phone to
pinpoint the suspect's location; and (4) ensuring that the officer could learn
his identity. Id. at 342. Moreover, we concluded that the officer was
able to confirm that he was detaining the right person due to the caller's
description of the vehicle, license number, and location of the vehicle. Id.
These same factors are present in
this case. As Appellant recognizes in his brief, Byrom was a private concerned
citizen, who was not connected with the police. See Stolte, 991 S.W.2d
at 341; Sailo, 910 S.W.2d at 188. Byrom gave the dispatcher a
description of Appellant's SUV, license plate, and location and personally
watched and reported Appellant's actions as he drove past Appellant's SUV. By
giving the police department his own name, cellular phone number, location, and
destination, Byrom put himself in a position to be held accountable for his
intervention. See Stolte, 991 S.W.2d at 341. Furthermore, the
information that Byrom gave the dispatcher not only allowed Officer Binkert to
confirm that he was approaching the correct vehicle, but also ensured that
Byrom's identity could be verified.
The only factual distinction we can
make between Stolte and the case at hand is that the caller in Stolte
pulled in behind the police officer after the stop, while Byrom gave information
when he was on the phone so that he could be contacted later, if necessary,
which occurred since he testified at Appellant's trial. We do not believe that
this distinction destroys Stolte's relevance to this case. In Stolte,
the police officer did not appear to even talk to the private citizen caller
until after he had made contact with the suspect. Therefore, we conclude that
Byrom's actions in this case were factually similar and result in no substantive
difference.
Considering the totality of the
circumstances in this case in light of our holding in Stolte, we hold
that the information from Byrom was sufficiently reliable to justify the
investigative stop and was adequately corroborated by Officer Binkert at the
time of the detention. The investigative stop thus did not violate Appellant's
constitutional or statutory rights. We hold that the trial court did not abuse
its discretion in overruling Appellant's motion to suppress, and we overrule
Appellant's sole point.
III. Conclusion
Having overruled Appellant's sole
point, we affirm the trial court's judgment.
 
                                                           
ANNE GARDNER
                                                           
JUSTICE
PANEL F: LIVINGSTON, DAUPHINOT, and
GARDNER, JJ.
PUBLISH
DELIVERED: July 24, 2003