TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00471-CR






Darrell Reesing, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY


NO. 2C02-01661, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING






O P I N I O N



 Appellant Darrell Reesing pleaded no contest to driving while intoxicated. See Tex.
Pen. Code Ann. § 49.04 (West 2003). The court adjudged him guilty and sentenced him to three
days in jail and a $2000 fine, as called for in a plea agreement. The only issue on appeal is whether
the court erred by overruling appellant's pretrial motion to suppress evidence. We find no error and
affirm the judgment of conviction.

 On the evening of February 14, 2002, Arthur Hankins stopped at a Belton Wal-Mart
store to purchase a Valentine's Day card. As he was looking at the display of cards, a man he
identified as appellant approached and stood beside him "unusually close." Appellant smelled
strongly of alcoholic beverage, and he made a tasteless remark to Hankins regarding a card he was
seeking. Hankins believed appellant was intoxicated.

 When Hankins returned to his pickup truck, he called 911 on his cell phone from the
parking lot. He told the dispatcher what had happened in the store and expressed his concern that
appellant was intoxicated and might be driving. As he spoke to the dispatcher, Hankins saw
appellant leave the store, get into a grey and black Cadillac, and drive away. Hankins reported this
to the dispatcher, then followed as appellant drove north on Main Street and then turned west on
Lake Road. Hankins remained on the phone and continued to report his observations. He noticed
that appellant was driving considerably below the speed limit. Appellant turned left into a video
store parking lot, crossing five lanes of traffic as he did so. He stopped briefly, then left the lot and
began to drive in the direction from which he had come. When Hankins saw a police officer stop
appellant, he also stopped nearby and waited. When the dispatcher told him to do so, Hankins drove
to the video store parking lot and gave a statement to one of the officers.

 Belton Police Officer Jerome Simpson was dispatched to the Wal-Mart in response
to Hankins's call. He testified:


 Dispatch--the radio operator of Bell County--called me on the radio and told
me that there was an intoxicated person in--person who appeared to be drunk from
what the caller had said, in Wal-Mart in Belton. And the person was--who called
911 was very concerned about this individual. He had been--from what the person
said to dispatch--and dispatch told me he was being obscene and the guy was--was
afraid of him basically.



Before Simpson got to the Wal-Mart, he was told that the suspect had left the store and was driving
north on Main. He was given a description of the suspect and his car, including the license plate
number. Simpson was regularly updated regarding appellant's activities: "They were continuously
giving information. The person who called was still on their cell phone the whole time, they never
hung up." Simpson arrived at the video store on Lake Road as appellant was entering the parking
lot. The officer pulled into the lot behind appellant and confirmed the license plate number. 
Appellant paused in the lot "for what [Simpson] considered to be a rather long time" given the
absence of traffic on Lake Road at that time. When appellant left the lot, Simpson turned on his
emergency lights. He testified that he stopped appellant because: "I was thinking that the person
was probably intoxicated, with all the information that I had received from the witness, the way he
pulled into the parking lot, made the turn, the pausing and hesitating when he was in the driveway,
and the failure to signal intent [to turn]." Appellant immediately stopped.

 Simpson testified that appellant appeared to be intoxicated, but another officer who
arrived soon after the stop actually performed the field sobriety tests and made the arrest. Simpson
took a written statement from Hankins at the scene.

 Appellant contends Officer Simpson did not have a lawful basis for stopping him, and
therefore all evidence obtained as a result of the stop should have been suppressed. See Tex. Code
Crim. Proc. Ann. art. 38.23(a) (West Supp. 2004). Because the facts are undisputed and the court's
ruling does not turn on the credibility of a witness, we will review de novo the order overruling the
motion to suppress. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 A police officer may stop and briefly detain a person for investigative purposes if the
officer, in light of his experience, has a reasonable suspicion supported by articulable facts that
criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). The reasonableness of a
temporary detention must be examined in terms of the totality of the circumstances. Woods v. State,
956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A temporary detention is justified when the detaining
officer has specific articulable facts which, taken together with rational inferences from those facts,
lead him to conclude that the person detained is, has been, or soon will be engaged in criminal
activity. Id.

 The facts before us are very similar to those before our sister court in State v. Stolte,
991 S.W.2d 336 (Tex. App.--Fort Worth 1999, no pet.). In that case, a man driving home from
work saw another vehicle being driven in an erratic and dangerous manner, and he suspected that
the driver of the vehicle was intoxicated. Id. at 340. He called 911 on his cell phone and reported
what he had seen, giving a description of the suspect vehicle. Id. As directed by the dispatcher, the
informant continued to follow the suspect and report his location. Id. After the suspect was stopped
by the police, the informant remained at the scene. Id.

 The issue in Stolte, as in the cause now before us, was whether there had been a
reasonable basis for stopping and detaining the driver of the suspect vehicle. The trial court ruled
that the stop was unlawful and granted the defendant's motion to suppress, but the court of appeals
reversed. Because we find the court's analysis to be persuasive, we quote it at length:


 The reasonableness of a given detention will turn on the totality of the
circumstances in that particular case. A tip by an unnamed informant of undisclosed
reliability standing alone rarely will establish the requisite level of suspicion
necessary to justify an investigative detention. There must be some further indicia
of reliability, some additional facts from which a police officer may reasonably
conclude that the tip is reliable and a detention is justified. The informant's veracity,
reliability, and basis of knowledge are highly relevant in determining the value of the
caller's report. . . .


 Corroboration by the law enforcement officer of any information related by the
informant may increase the reliability of the information. However, "corroboration"
in this sense does not mean that the officer must personally observe the conduct that
causes him to reasonably suspect that a crime is being, has been, or is about to be
committed. Rather, corroboration refers to whether the police officer, in light of the
circumstances, confirms enough facts to reasonably conclude that the information
given to him is reliable and a temporary detention is thus justified.


 Where the reliability of the information is increased, less corroboration is
necessary. A detailed description of the wrongdoing, along with a statement that the
event was observed firsthand, entitles an informant's tip to greater weight. So does
the fact that the person put himself in a position to be held accountable for his
intervention. Furthermore, a person who is not connected with the police or who is
not a paid informant is considered inherently trustworthy when he advises the police
that he suspects criminal activity has occurred or is occurring.


 . . . .


Kratky [the officer] knew that he could learn the identity of the citizen-informant
who had called in the report. Likewise, Cowell [the citizen-informant] undoubtedly
knew that by calling the police and stopping at the scene, he was putting himself in
a position to be held accountable for his intervention. In addition, Cowell told the
dispatcher that he was personally watching Stolte, which entitled the police to give
greater weight to the tip. Kratky also knew that the concerned citizen had remained
on his cellular phone to track and report the suspect's location, which lent credence
to the caller's veracity. These factors all increased the reliability of the information
that Kratky received from his dispatcher.


 . . . .


 In this instance, the suspected offense involved an immediate threat to the public
safety. Kratky, a 10-year veteran of the police force, was obviously aware of the
danger that Stolte posed to both himself and other drivers if Cowell's suspicions
about Stolte's inebriated state were accurate. Acting on the information he had at the
time of the detention, without the benefit of hindsight, it was reasonable for Kratky
to suspect that Stolte might be driving while intoxicated and to conclude that a brief
detention was warranted to further investigate. Thus, in light of the totality of the
circumstances, including both the important public and private interests involved, we
hold that Kratky was justified in initiating an investigatory stop when he confirmed
that a pickup was located where the informant indicated, which matched the
description and license plate given.



Id. at 341-42 (citations and footnote omitted).

 Like the officer in Stolte, Officer Simpson did not see appellant commit a traffic
offense. (1) He knew, however, that an identified caller to 911 had encountered the suspect in the Wal-Mart and had given a detailed report explaining why he believed him to be intoxicated. Because the
caller had actually spoken to appellant and smelled the alcoholic beverage on his breath, his tip was
arguably more credible than the caller's tip in Stolte. The officer also knew that the caller had
remained on his cell phone and was following the suspect to report his actions and whereabouts. 
That the caller was willing to identify himself, remain on the telephone, follow the suspect, and wait
at the scene to give a statement lent significant weight to his tip. When Simpson arrived at the video
store, appellant was there in his Cadillac just as the caller had said. Appellant's observed behavior
in the lot, while not alone indicative of intoxication, gave a small additional measure of
corroboration to the caller's report. Given the totality of the circumstances, we conclude that Officer
Simpson had a reasonable basis for suspecting that appellant was driving while intoxicated and to
stop him for further investigation.

 Appellant argues that "[i]f the trial court's decision in this case is allowed to stand,
it will open a Pandora's Box of miffed and disgruntled citizens making assumptions unsupported
by the facts in order to get revenge or satisfaction for minor insults or impositions." But persons
who make false or unsubstantiated reports to the police out of spite or a desire to cause mischief are
rarely willing to identify themselves and be held accountable for their actions. This is one reason
why investigatory detentions based solely on uncorroborated tips from anonymous informants are
generally considered unlawful. See Stewart v. State, 22 S.W.3d 646, 648-49 (Tex. App.--Austin
2000, pet. ref'd) (anonymous tip corroborated only with respect to innocuous and easily observable
details did not give officer reason to suspect that appellant was driving while intoxicated). It is not
unreasonable, however, for a police officer to rely on detailed, firsthand information received from
a citizen informer who is willing to identify himself and make himself accountable for the
consequences of his report. See Illinois v. Gates, 462 U.S. 213, 234 (1983); United States v. Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir. 1978); State v. Fudge, 42 S.W.3d 226, 246 (Tex.
App.--Austin 2001, no pet.) (Patterson, J., dissenting).

 The point of error is overruled and the judgment of conviction is affirmed.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: June 10, 2004

Publish
1. Appellant argues that his failure to signal his turn as he left the video store parking lot was not
an offense because the parking lot is not a highway. See Tex. Transp. Code Ann. §§ 542.001,
545.104 (West 1999). For the purpose of this opinion, we will assume that appellant is correct.