COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-340-CR

 

 

TIMOTHY
 SHAWN RAY                                                                     APPELLANT

 

V.

 

THE
 STATE OF TEXAS                                                                             
 
 STATE

 

------------

 

FROM COUNTY
 CRIMINAL COURT NO. 8 OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          In one point that challenges only the
trial court’s pretrial denial of his motion to suppress evidence, appellant
Timothy Shawn Ray appeals his conviction for driving while intoxicated (DWI).  See Tex.
Penal Code Ann. § 49.04(a) (Vernon 2003). 
We affirm.

Background Facts

 

          The facts underlying this appeal are
undisputed.  Near evening on June 7, 2008,
Jeanie Allen was driving a car on a busy road when she saw appellant weave in his
own lane and between lanes and drive up onto the curb with two tires.  Allen called 911 because she was concerned that
appellant was drunk. After Allen told the 911 operator her name and phone
number, she gave the operator a description of appellant’s car—including its
make, model, and license plate number—and continued to follow appellant.  Appellant turned into the parking lot of a
convenience store, and Allen still followed appellant while she remained on the
phone.

          Allen watched appellant park the car and
enter the store.  Based on Allen’s
information as relayed through dispatch, Arlington Police Department Officer
Brian Martin eventually arrived at the store.[2]  Allen urgently flagged down Officer Martin and
insistently said, “That’s the car right there.”[3]  While Allen and Officer Martin were talking, appellant
left the store and returned to his car.  Officer Martin pulled in behind appellant and
turned on his patrol car’s lights for an investigative stop as appellant was
leaving the parking lot.  Appellant drove
a short distance and then stopped.

          Officer Martin’s stopping appellant’s
car led to the State’s charging him with DWI. 
Appellant filed a pretrial motion to suppress based on alleged
violations of the United States Constitution and the Texas constitution.  During the evidentiary hearing on the
motion, appellant argued that Officer Martin did not have reasonable suspicion
to detain him because, among other reasons, Officer Martin did not have the
same information regarding appellant’s erratic driving that Allen had told the
dispatcher.  Thus, appellant asserted
that all evidence that followed the stop of his car could not be used at trial.
 The trial court denied appellant’s
motion, and appellant pled guilty under a plea bargain.  The trial court convicted appellant, and appellant
filed his notice of this appeal.

Denial of
Appellant’s Motion to Suppress

Standard of review

          We review a trial court’s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d
857, 861 (Tex. App.—Fort Worth 2003, no pet.). 
The trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony.  Wiede v. State, 214 S.W.3d 17, 24–25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court’s rulings on (1) questions
of historical fact, even if the trial court’s determination of those facts was
not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court’s rulings on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated another way, when reviewing the
trial court’s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the trial court’s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  We must uphold the trial court’s ruling if it
is supported by the record and correct under any theory of law applicable to
the case.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

Applicable law and analysis

          The Fourth Amendment protects against
unreasonable searches and seizures by government officials.  U.S. Const. amend. IV; Wiede, 214
S.W.3d at 24.  To suppress evidence
because of an alleged Fourth Amendment violation, the defendant bears the
initial burden of producing evidence that rebuts the presumption of proper
police conduct.  Amador, 221
S.W.3d at 672; see Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App.),
cert. denied, 130 S. Ct. 1015 (2009).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Amador, 221 S.W.3d at 672.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 672–73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

          A detention, as opposed to an arrest,
may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 21–22, 88
S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000).  An officer
conducts a lawful temporary detention when he or she has reasonable suspicion
to believe that an individual is violating the law.  Ford, 158 S.W.3d at 492.  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Id. This is an objective standard that
disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.  Id.

          Appellant contends that the trial
court erred by denying his motion to suppress because Officer Martin “received
an uncorroborated citizen informant’s report of bad driving facts[,] and
without observing any actions by the suspect driver or any criminal acts
whatsoever . . . [Officer Martin] initiated a stop.”  But precedent from this court compels us
to disagree with appellant’s legal conclusion and hold that Officer Martin had
reasonable suspicion to stop appellant’s car and detain him.

          In State
v. Stolte, a driver saw Stolte’s car driving slowly and weaving in and out
of its traffic lane.  991 S.W.2d 336, 340
(Tex. App.—Fort Worth 1999, no pet.).  The driver believed that Stolte was “a danger
to himself as well as other drivers” and therefore called 911 through a cell
phone while continuing to follow the suspected drunk driver.  Id.  A dispatcher notified Bedford Police
Department Officer Michael Kratky that the caller had reported a suspected DWI,
gave Officer Kratky a description of Stolte’s pickup, and told Officer Kratky
which direction Stolte was traveling.  Id. at 339.  Officer Kratky found Stolte’s pickup, turned
on his patrol car’s emergency lights, and stopped the pickup as the cell phone
caller stopped behind Officer Kratky’s patrol car.  Id.
at 339–40.

          Based on Officer Kratky’s observations
after stopping Stolte’s pickup, Stolte was charged with DWI, and he filed a
motion to suppress on the basis that Officer Kratky did not have reasonable
suspicion to detain him.  Id.  The trial court granted the motion.  Id. at
339. 
On appeal, Stolte argued that “an officer may not make an investigative
stop based solely on an anonymous call that does not relate any of the details
on which the caller based his opinion, unless the officer personally
corroborates the report with other matters within the officer’s knowledge.”  Id.  But we held that Officer Kratky had
reasonable suspicion to detain Stolte, and therefore reversed and remanded the
case, reasoning,

A tip by an unnamed informant of
undisclosed reliability standing alone rarely will establish the requisite
level of suspicion necessary to justify an investigative detention.  There must be some further indicia of
reliability, some additional facts from which a police officer may reasonably
conclude that the tip is reliable and a detention is justified.  The informant’s veracity, reliability, and
basis of knowledge are highly relevant in determining the value of the caller’s
report. . . .

       Corroboration
by the law enforcement officer of any information related by the informant may
increase the reliability of the information.  However, “corroboration” in this sense does
not mean that the officer must personally observe the conduct that causes him
to reasonably suspect that a crime is being, has been, or is about to be
committed.  Rather, corroboration refers
to whether the police officer, in light of the circumstances, confirms enough
facts to reasonably conclude that the information given to him is reliable and
a temporary detention is thus justified.

       Where
the reliability of the information is increased, less corroboration is
necessary.  A detailed description of the
wrongdoing, along with a statement that the event was observed firsthand,
entitles an informant’s tip to greater weight.  So does the fact that the person put himself
in a position to be held accountable for his intervention.  Furthermore, a person who is not connected
with the police or who is not a paid informant is considered inherently trustworthy
when he advises the police that he suspects criminal activity has occurred or
is occurring. 

       .
. . .

       In
this case, Kratky testified that his dispatcher advised him that a cellular
phone caller had reported a possible DWI and was following the suspect. . . .  Because the caller had given the license plate
number, a specific description of the vehicle, and was continually updating the
dispatcher on the location of the suspect’s vehicle, Kratky had every reason to
believe that he was detaining the right person. . . .

       Moreover,
although he did not know the citizen-informant’s name, Kratky testified that in
cases like this, it is standard procedure for the dispatcher to instruct
callers to pull in behind the patrol car and wait to be contacted by an
officer.  Thus, Kratky knew that he could
learn the identity of the citizen-informant who had called in the report.  Likewise, [the cell phone caller] undoubtedly
knew that by calling the police and stopping at the scene, he was putting
himself in a position to be held accountable for his intervention.  In addition, [the caller] told the dispatcher
that he was personally watching Stolte, which entitled the police to give
greater weight to the tip.  Kratky also
knew that the concerned citizen had remained on his cellular phone to track and
report the suspect’s location, which lent credence to the caller’s veracity. .
. . 

       .
. . .

        . . .  Acting
on the information he had at the time of the detention, without the benefit of
hindsight, it was reasonable for Kratky to suspect that Stolte might be driving
while intoxicated and to conclude that a brief detention was warranted to
further investigate.[[4]]  Thus, in light of the totality of the
circumstances, including both the important public and private interests
involved, we hold that Kratky was justified in initiating an investigatory stop
. . . .

Id. at 341–43 (citations omitted).  

          The similarity between the facts of
this case and those in Stolte is
obvious.  In both cases, 

·       
a driver saw someone that the driver suspected to be intoxicated based
on a car’s swerving and called 911, keeping the 911 operator aware of the
swerving car’s location and giving the operator a detailed description of the car;

 

·       
the caller remained in contact with the police and was accountable to
the detaining officer for the information the caller had given;[5]

 

·       
the dispatch to the officer did not relate the particular details from
the caller that supported the caller’s opinion of intoxication;

 

·       
the officer did not personally corroborate evidence of intoxication; and

 

·       
the caller did not have a direct connection with the arresting police.[6]

 

On the
other hand, the facts of the cases relied on by appellant are inapposite to the
facts of this case.  See, e.g., Gurrola v. State, 877 S.W.2d 300, 301–03 (Tex. Crim. App.
1994) (holding that an officer did not have justification for detaining and
searching the defendant in a high crime area based only on the officer’s being
informed that a “disturbance” was occurring, the officer’s observing a “heated
discussion,” and the defendant’s walking away from the officer); Glass v. State, 681 S.W.2d 599, 600–02
(Tex. Crim. App. 1984) (holding that the trial court should have granted the
defendant’s motion to suppress when an officer stopped a car based on the
officer’s receiving a call from an anonymous
source because, among other reasons, the record did not show the temporal
proximity of the call to the stop of the defendant’s car).  

          Thus, following our decision in Stolte, which we conclude is
indistinguishable from this case, we agree with the trial court’s implicit
conclusion (evidenced from its denial of appellant’s motion) that Officer
Martin had reasonable suspicion to detain appellant.[7]  See Stolte,
991 S.W.2d at 341–43; see also Brother v.
State, 166 S.W.3d 255, 256–60
(Tex. Crim. App. 2005), cert. denied,
546 U.S. 1150 (2006); Pipkin v. State,
114 S.W.3d 649, 652–56 (Tex. App.—Fort Worth 2003, no pet.) (citing Stolte and holding similarly under
analogous facts); Glover v. State,
870 S.W.2d 198, 199–200 (Tex. App.—Fort Worth 1994, pet. ref’d).  Therefore, we overrule appellant’s sole
point.

Conclusion

         Having overruled appellant’s point of error,
we affirm the trial court’s judgment.                                     

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; WALKER AND MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 22, 2010











[1]See Tex. R. App. P. 47.4.





[2]Officer
Martin said that the dispatcher told him “just basically that the person who
called 911, they had -- they were behind someone who they thought . . . might
possibly be a DWI driver.”  The
dispatcher did not specifically describe what Allen had said about appellant’s
driving.





[3]Allen
also informed Officer Martin of her belief that appellant’s driving was dangerous
to other drivers.





[4]We
explained that “it would be wholly unreasonable, under these facts, to
require a police officer to ‘corroborate’ an informant’s tip by waiting for the
suspect to swerve out of his lane or otherwise jeopardize the safety of other
drivers.”  Stolte, 991 S.W.2d at 343 n.4.





[5]While
the caller in Stolte pulled behind
the officer when the officer detained Stolte, Allen remained in the convenience
store’s parking lot when appellant went into the store, actually saw and talked
to the officer outside of the store, and gave the police her name and phone
number so that the police could contact her.





[6]Allen’s husband is
a police officer, but he works for the City of Irving, not Arlington.  The record does not show that Allen knew the
911 operator or Officer Martin before she saw appellant’s swerving car.





[7]Our
previous decisions are binding precedent. 
See Bray v. State, 179 S.W.3d
725, 729 (Tex. App.—Fort Worth 2005, no pet.) (en banc).