

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00190-CR

ROBERT BRANDON RYALS APPELLANT

V.

THE STATE OF TEXAS STATE

----------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

The question in this DWI appeal is whether a police officer can make an investigative detention of a driver of an automobile after being told by a nervous and excited young boy that the driver had attempted to get him in the driver's car. Under the circumstances of this case, we answer yes and affirm the trial court's order.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

Appellant Robert Brandon Ryals was stopped by the police for investigative purposes. When he was determined to be intoxicated, he was arrested and charged with DWI subsequent offense.

Appellant filed a motion to suppress any evidence discovered as a result of the detention. Appellant argued that the officer had only vague and limited information of questionable reliability and that he did not have a reasonable suspicion of any connection to criminal activity.

At the subsequent suppression hearing, Fort Worth police officer Gregory Riddle was the only witness to testify. He testified that he was a college graduate who had been a certified peace officer for sixteen years. His duties were to answer calls made by citizens, conduct traffic stops, and make investigations when necessary. At approximately 5:00 p.m. on April 29, 2009, Officer Riddle was stopped at a traffic light in his marked patrol car at the intersection of Miller Avenue and Rosedale Street in Fort Worth when a nervous and excited black male, perceived by the officer to be twelve-to-thirteen years old, approached and told him, "The guy in that car tried to get me in the car," pointing at a red Mustang convertible located eastbound on Rosedale. Officer Riddle motioned to Officer Garcia, another police officer who was behind him, to come with him. The officers then made a U-turn and stopped the red convertible that Appellant was driving. The boy, Anthony McFarland, was present at the scene of the detention.

When asked why he had stopped the vehicle, Officer Riddle stated:

"Based on what I was told by the witness, I felt I had reasonable suspicion to stop this vehicle because it could have been a possible abduction, kidnapping. I didn't know . . . Just the limited amount of what the witness had told me, I felt I had enough reasonable suspicion to stop.

On cross-examination, when asked whether McFarland had mentioned any physical contact or threat of force, Officer Riddle stated, "Not initially."

At the end of the suppression hearing, Appellant's counsel was granted permission to furnish the trial court a memorandum of law on the issue of whether the officer had reasonable suspicion to make the detention in question.

On December 10, 2009, the court stated

After reviewing all the submitted authorities, I'm going to deny the motion to suppress, and I will note these facts for the record: That Officer Riddle, while in the vicinity of where these events occurred, was approached by a youth that appeared to be between the ages of 12 and 13 years of age, who had a nervous demeanor, who made the comment to the officer that an individual had tried to get him in a car, at which time he pointed out the vehicle and identified the vehicle driven by the [defendant] as the vehicle with the person that tried to get him in a car.

Those are the facts the Court finds significant prior to a stop occurring. The Court will note that the essence of a detention is, when an officer is presented with ambiguous facts, for the officer to make a temporary detention of the individual to determine whether or not further investigation is warranted. And in keeping with that logic, the Court will find the detention of the [d]efendant in this case was appropriate and will deny the motion to suppress. That's the Court's order.

3

After the conclusion of this hearing, a plea bargain was reached in which the State waived the enhancement paragraph of the information. The Appellant pleaded guilty to a lesser offense, Class B misdemeanor DWI. The trial court assessed a fine of $500 and sentenced Appellant to 120 days in jail, but it suspended imposition of the confinement portion and placed Appellant on community supervision.

On appeal, Appellant claims that the trial court erred in denying his motion to suppress because there was no reasonable suspicion that Appellant had engaged in anything related to criminal activity. He argues that Officer Riddle had no knowledge of whether McFarland was telling the truth or sending him off on a wild goose chase as a practical joke; Officer Riddle had no knowledge of whether McFarland was reliable and trustworthy; and the record does not suggest Officer Riddle knew McFarland before he approached. In sum, Appellant argues the information that McFarland provided to Officer Riddle included insufficient detail and reliability that when combined with rational inferences from those facts, would objectively lead an officer to reasonably conclude Appellant was, had been, or would soon be engaged in criminal activity.

### Applicable Law

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Lemmons v. State*, 133 S.W.3d 751, 755 (Tex. App.—Fort Worth 2004, pet. ref'd). We afford almost total deference to a trial court's determination of

4

historical facts that the record supports, especially when the trial court's fact findings are based upon an evaluation of credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We afford the same amount of deference to the trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *Carmouche*, 10 S.W.3d at 332–33; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo, however, the trial court's application of law to the facts in determining whether reasonable suspicion supported an investigative detention. *See Carmouche*, 10 S.W.3d at 327–28; *Guzman*, 955 S.W.2d at 89; *Lemmons*, 133 S.W.3d at 755.

An investigative "stop" by law enforcement personnel is a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578–79 (1975); *Terry v. Ohio*, 392 U.S. 1, 16–17, 88 S. Ct. 1868, 1877 (1968). Nevertheless, an officer is generally justified in briefly detaining an individual on less than probable cause to investigate the possibility of criminal behavior. *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880; *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). An investigative detention is justified when the officer possesses a reasonable suspicion; that is, the officer is able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). The

5

articulable facts used by the officer must indicate that some activity out of the ordinary is occurring or has occurred, that the detainee is connected with the unusual activity, and that the unusual activity is related to a crime. *Garza*, 771 S.W.2d at 558; *State v. Adkins*, 829 S.W.2d 900, 901 (Tex. App.—Fort Worth 1992, pet. ref'd). The reasonable suspicion determination is made by considering the totality of the circumstances. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Lemmons*, 133 S.W.3d at 756. The facts and circumstances that provide a reasonable suspicion of criminal activity need not be criminal in nature themselves as long as they include facts that in some way would increase the likelihood of the presence or occurrence of criminal activity. *See Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). Under the reasonable suspicion standard, if circumstances are consistent with criminal activity, "they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances" in the proper discharge of the officer's duties. *Woods*, 956 S.W.2d at 37.

In deciding whether the facts of the situation would justify an investigative detention, it is expected that an officer will draw on his experience and personal knowledge. *Garza*, 771 S.W.2d at 558. "'When used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person . . . .'" *Woods*, 956 S.W.2d at 37–38 (quoting *United States v. Cortez*, 449 U.S. 411, 419, 101 S. Ct. 690, 695–96 (1981)). Information given to

6

an officer by a named informant is the most reliable form of tip information.  *See Derichsweiler v. State*, No. PD-0176-10, 2011 WL 255299, at *6 (Tex. Crim. App. Jan. 26, 2011); *State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.).

And further the officer has to only have a reasonable belief formed at the time he receives it that the person to be detained was, has been, or is possibly about to engage in something related to criminal activity.  *See Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  *See also United States v. Sokolow*, 490 U.S. 1, 12, 109 S. Ct. 1581, 1588 (1989) (Marshall, J., dissenting) ("The reasonable-suspicion standard is a derivation of the probable-cause command, applicable only to those brief detentions which fall short of being full-scale searches and seizures and which are necessitated by law enforcement exigencies such as the need to stop ongoing crimes, *to prevent imminent crimes*, and to protect law enforcement officers in highly charged situations.") (emphasis added); *Terry*, 392 U.S. at 27–28, 88 S. Ct. at 1883 (1968) (officer's conduct of stopping the suspects and conducting a pat-down for weapons was reasonable at its inception and as conducted because officer observed them acting in a manner "he took to be preface to a 'stick-up.'"  That is, their actions were "consistent with [the officer's] hypothesis that these men were contemplating a daylight robbery.")

7

**Analysis**

Since Appellant does not dispute the trial court's findings of fact, we proceed to the legal question of whether the trial court correctly applied the law to these facts, specifically whether the totality of these circumstances satisfied the State's burden to prove that the warrantless investigative detention was supported by reasonable suspicion that Appellant is, has been, or soon will be engaged in some matter which in some manner may be connected to possible criminal activity at the time the police pulled him over. We believe it does.

In ruling on the motion to suppress, the trial court characterized the information given by the boy as "ambiguous," meaning, we believe, that Appellant could have been merely offering the youngster a ride or that Appellant had a more nefarious motive related to some form of criminal activity, such as a prelude to a kidnapping or abduction, as the officer stated, or some manner of criminal attempt by a pedophile or other sexual predator. In any event, the trial court could have inferred that an exigent circumstance existed in the officer's mind, based on his experience and background, that called for at least an explanation and that Appellant was going to disappear unless the officer took action. We would objectively expect that a police officer would do this. If, when stopped, Appellant had a reasonable explanation for his actions, the matter could have been quickly resolved since McFarland was still on the scene.

8

As our Court of Criminal Appeals recently stated in *Derichsweiler* cited above:

> It matters not that all of this conduct could be construed as innocent of itself; for purposes of a reasonable-suspicion analysis, it is enough that the totality of the circumstances, viewed objectively and in the aggregate, suggests the realistic possibility of a criminal motive, however amorphous, that was about to be acted upon. Under these circumstances, the Fourth Amendment permits the police to make a brief stop to investigate, if only by their presence to avert an inchoate offense.

2011 WL 255299, at *6. We overrule Appellant's sole issue.

## Conclusion

We affirm the order of the trial court.

PER CURIAM

PANEL: CHARLES R. HOLCOMB (Senior Judge, Retired, Sitting By Assignment); DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 26, 2011