

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-09-340-CR

TIMOTHY SHAWN RAY                                                                APPELLANT

V.

THE STATE OF TEXAS                                                                       STATE

------------

## FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In one point that challenges only the trial court's pretrial denial of his motion to suppress evidence, appellant Timothy Shawn Ray appeals his conviction for driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). We affirm.

## Background Facts

The facts underlying this appeal are undisputed. Near evening on June 7, 2008, Jeanie Allen was driving a car on a busy road when she saw appellant

---

[1]*See* Tex. R. App. P. 47.4.

weave in his own lane and between lanes and drive up onto the curb with two tires. Allen called 911 because she was concerned that appellant was drunk. After Allen told the 911 operator her name and phone number, she gave the operator a description of appellant's car—including its make, model, and license plate number—and continued to follow appellant. Appellant turned into the parking lot of a convenience store, and Allen still followed appellant while she remained on the phone.

Allen watched appellant park the car and enter the store. Based on Allen's information as relayed through dispatch, Arlington Police Department Officer Brian Martin eventually arrived at the store.[2] Allen urgently flagged down Officer Martin and insistently said, "That's the car right there."[3] While Allen and Officer Martin were talking, appellant left the store and returned to his car. Officer Martin pulled in behind appellant and turned on his patrol car's lights for an investigative stop as appellant was leaving the parking lot. Appellant drove a short distance and then stopped.

Officer Martin's stopping appellant's car led to the State's charging him with DWI. Appellant filed a pretrial motion to suppress based on alleged

---

[2]Officer Martin said that the dispatcher told him "just basically that the person who called 911, they had -- they were behind someone who they thought . . . might possibly be a DWI driver." The dispatcher did not specifically describe what Allen had said about appellant's driving.

[3]Allen also informed Officer Martin of her belief that appellant's driving was dangerous to other drivers.

violations of the United States Constitution and the Texas constitution. During the evidentiary hearing on the motion, appellant argued that Officer Martin did not have reasonable suspicion to detain him because, among other reasons, Officer Martin did not have the same information regarding appellant's erratic driving that Allen had told the dispatcher. Thus, appellant asserted that all evidence that followed the stop of his car could not be used at trial. The trial court denied appellant's motion, and appellant pled guilty under a plea bargain. The trial court convicted appellant, and appellant filed his notice of this appeal.

## Denial of Appellant's Motion to Suppress

### Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts

3

was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**Applicable law and analysis**

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015

4

(2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

Appellant contends that the trial court erred by denying his motion to suppress because Officer Martin "received an uncorroborated citizen informant's

report of bad driving facts[,] and without observing any actions by the suspect driver or any criminal acts whatsoever . . . [Officer Martin] initiated a stop." But precedent from this court compels us to disagree with appellant's legal conclusion and hold that Officer Martin had reasonable suspicion to stop appellant's car and detain him.

In *State v. Stolte*, a driver saw Stolte's car driving slowly and weaving in and out of its traffic lane. 991 S.W.2d 336, 340 (Tex. App.—Fort Worth 1999, no pet.). The driver believed that Stolte was "a danger to himself as well as other drivers" and therefore called 911 through a cell phone while continuing to follow the suspected drunk driver. *Id.* A dispatcher notified Bedford Police Department Officer Michael Kratky that the caller had reported a suspected DWI, gave Officer Kratky a description of Stolte's pickup, and told Officer Kratky which direction Stolte was traveling. *Id.* at 339. Officer Kratky found Stolte's pickup, turned on his patrol car's emergency lights, and stopped the pickup as the cell phone caller stopped behind Officer Kratky's patrol car. *Id.* at 339–40.

Based on Officer Kratky's observations after stopping Stolte's pickup, Stolte was charged with DWI, and he filed a motion to suppress on the basis that Officer Kratky did not have reasonable suspicion to detain him. *Id.* The trial court granted the motion. *Id.* at 339. On appeal, Stolte argued that "an officer may not make an investigative stop based solely on an anonymous call that does not relate any of the details on which the caller based his opinion, unless the officer personally corroborates the report with other matters within the officer's

6

knowledge." *Id.* But we held that Officer Kratky had reasonable suspicion to detain Stolte, and therefore reversed and remanded the case, reasoning,

> A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. The informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of the caller's report. . . .

> Corroboration by the law enforcement officer of any information related by the informant may increase the reliability of the information. However, "corroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified.

> Where the reliability of the information is increased, less corroboration is necessary. A detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. So does the fact that the person put himself in a position to be held accountable for his intervention. Furthermore, a person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring.

> . . . .

> In this case, Kratky testified that his dispatcher advised him that a cellular phone caller had reported a possible DWI and was following the suspect. . . . Because the caller had given the license plate number, a specific description of the vehicle, and was continually updating the dispatcher on the location of the

suspect's vehicle, Kratky had every reason to believe that he was detaining the right person. . . .

Moreover, although he did not know the citizen-informant's name, Kratky testified that in cases like this, it is standard procedure for the dispatcher to instruct callers to pull in behind the patrol car and wait to be contacted by an officer. Thus, Kratky knew that he could learn the identity of the citizen-informant who had called in the report. Likewise, [the cell phone caller] undoubtedly knew that by calling the police and stopping at the scene, he was putting himself in a position to be held accountable for his intervention. In addition, [the caller] told the dispatcher that he was personally watching Stolte, which entitled the police to give greater weight to the tip. Kratky also knew that the concerned citizen had remained on his cellular phone to track and report the suspect's location, which lent credence to the caller's veracity. . . .

. . . .

. . . Acting on the information he had at the time of the detention, without the benefit of hindsight, it was reasonable for Kratky to suspect that Stolte might be driving while intoxicated and to conclude that a brief detention was warranted to further investigate.[4] Thus, in light of the totality of the circumstances, including both the important public and private interests involved, we hold that Kratky was justified in initiating an investigatory stop . . . .

*Id.* at 341–43 (citations omitted).

The similarity between the facts of this case and those in *Stolte* is obvious.

In both cases,

- a driver saw someone that the driver suspected to be intoxicated based on a car's swerving and called 911, keeping the 911 operator

---

[4]We explained that "it would be wholly *unreasonable,* under these facts, to require a police officer to 'corroborate' an informant's tip by waiting for the suspect to swerve out of his lane or otherwise jeopardize the safety of other drivers." *Stolte,* 991 S.W.2d at 343 n.4.

aware of the swerving car's location and giving the operator a detailed description of the car;

- the caller remained in contact with the police and was accountable to the detaining officer for the information the caller had given;[5]

- the dispatch to the officer did not relate the particular details from the caller that supported the caller's opinion of intoxication;

- the officer did not personally corroborate evidence of intoxication; and

- the caller did not have a direct connection with the arresting police.[6]

On the other hand, the facts of the cases relied on by appellant are inapposite to the facts of this case. *See, e.g., Gurrola v. State*, 877 S.W.2d 300, 301–03 (Tex. Crim. App. 1994) (holding that an officer did not have justification for detaining and searching the defendant in a high crime area based only on the officer's being informed that a "disturbance" was occurring, the officer's observing a "heated discussion," and the defendant's walking away from the officer); *Glass v. State*, 681 S.W.2d 599, 600–02 (Tex. Crim. App. 1984) (holding that the trial court should have granted the defendant's motion to suppress when an officer stopped a car based on the officer's receiving a call from an *anonymous* source

---

[5]While the caller in *Stolte* pulled behind the officer when the officer detained Stolte, Allen remained in the convenience store's parking lot when appellant went into the store, actually saw and talked to the officer outside of the store, and gave the police her name and phone number so that the police could contact her.

[6]Allen's husband is a police officer, but he works for the City of Irving, not Arlington. The record does not show that Allen knew the 911 operator or Officer Martin before she saw appellant's swerving car.

9

because, among other reasons, the record did not show the temporal proximity of the call to the stop of the defendant's car).

Thus, following our decision in *Stolte*, which we conclude is indistinguishable from this case, we agree with the trial court's implicit conclusion (evidenced from its denial of appellant's motion) that Officer Martin had reasonable suspicion to detain appellant.[7] *See Stolte*, 991 S.W.2d at 341–43; *see also Brother v. State*, 166 S.W.3d 255, 256–60 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150 (2006); *Pipkin v. State*, 114 S.W.3d 649, 652–56 (Tex. App.—Fort Worth 2003, no pet.) (citing *Stolte* and holding similarly under analogous facts); *Glover v. State*, 870 S.W.2d 198, 199–200 (Tex. App.—Fort Worth 1994, pet. ref'd). Therefore, we overrule appellant's sole point.

## Conclusion

Having overruled appellant's point of error, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER AND MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 22, 2010

---

[7]Our previous decisions are binding precedent. *See Bray v. State*, 179 S.W.3d 725, 729 (Tex. App.—Fort Worth 2005, no pet.) (en banc).