NO. 07-09-00173-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 31, 2011

_____

KATHY M. MITCHELL, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,777; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant Kathy M. Mitchell appeals her conviction for the offense of possession of a controlled substance, methamphetamine, less than one gram.[1]  After the trial court denied appellant's motion to suppress methamphetamine found in her vehicle, appellant plead guilty and received a sentence of eighteen months in a state jail pursuant to a plea bargain agreement.  Appellant reserved the right to appeal the order denying her

_____

[1] *See* Tex. Health & Safety Code Ann. § 481.115(a),(b) (West 2010).

suppression motion. Finding the trial court did not abuse its discretion by overruling appellant's suppression motion, we will affirm.

## Background[2]

In August 2007, Lubbock police arrested John Trocchio. He informed them that Kathy Mitchell and an unnamed male friend were "cooking methamphetamine" at a Lubbock address. Later that night, an officer set up surveillance of the location. Shortly after 1:00 a.m. the officer watched a Mitsubishi Eclipse pass the residence and turn without properly signaling. The vehicle rounded the block and turned into the driveway of the residence. The driver again did not properly signal the turn.

The officer pulled his patrol car, lights flashing, into the driveway behind the Mitsubishi and contacted its occupants. He identified appellant as the driver and Thomas Hurtado as the passenger. Appellant produced no driver's license. According to the officer, appellant was shaking, appeared "very nervous," and was agitated at being stopped. The officer requested background information concerning appellant and Hurtado from the police dispatcher.

The officer asked appellant for consent to search her vehicle. She refused. He then placed her in the back seat of his patrol car. Some three minutes later the officer received a return on the requested background information. According to the report, appellant's driver's license was invalid. Appellant denied the report, and asked the

---

[2] The facts stated are drawn from testimony at the hearing of appellant's suppression motion and a video-audio recording of the stop admitted at the hearing.

2

officer to rerun the request. The officer inquired of other names appellant used and resubmitted the request to the dispatcher.

After appellant refused consent to search her car, the officer called for a canine unit to conduct a free air sniff of the vehicle for narcotics.

Approximately eighteen minutes into the stop, the officer told appellant he had requested a canine. He explained he would search her car if the dog alerted but if the dog did not he would issue appellant a warning ticket. Two minutes later the dispatcher confirmed the invalid status of appellant's driver's license. Five minutes after the driver's license return the canine began a sniff of appellant's vehicle. According to the officer, the dog alerted and a search of appellant's vehicle yielded a quantity of methamphetamine.

Analysis

In a single issue, appellant argues the trial court's order denying her motion to suppress violates the Fourth and Fourteenth Amendments of the United States Constitution. Appellant does not challenge the propriety of the initial traffic stop. Rather, her complaint is the officer lacked reasonable suspicion to continue the detention for a canine sniff.

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight given their testimony. *State v. Ross,* 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). We

3

afford almost total deference to the trial court's determination of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  However, detention and reasonable suspicion are by nature legal concepts and are properly subject to *de novo* review.  *Hunter v. State,* 955 S.W.2d 102, 107 (Tex.Crim.App. 1997); *Sanders v. State,* 992 S.W.2d 742, 744 (Tex.App.--Amarillo 1999, pet. refused).  Accordingly, for purposes of a Fourth Amendment analysis we give appropriate deference to the trial court's determination of historical facts, but we review the decision of the trial court *de novo* as to whether the historical facts, viewed from the standpoint of an objectively reasonable person so situated as was the police officer, amount to "reasonable suspicion" justifying an investigatory detention.  *Ornelas v. United States,* 517 U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996); *Guzman,* 955 S.W.2d at 89. When, as here, no findings of fact were requested nor filed, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record.  *See Ross,* 32 S.W.3d at 855-56.

An investigatory detention is reasonable, and therefore constitutional, if (1) the officer's action was justified at the detention's inception; and (2) the detention was reasonably related in scope to the circumstances that justified the interference in the first place.  *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).  Under the first prong of *Terry,* the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  392 U.S. at 21, 88 S.Ct. at 1880.  The officer must have a "reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some

4

indication that the unusual activity is related to crime." *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App. 1997) (citing *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App. 1983)). "The second prong of *Terry* deals with the scope of the detention. . . . [A]n investigative detention, 'like any other search, must be strictly circumscribed by the exigencies which justify its initiation.'" *Id.* at 243 (quoting *Terry,* 392 U.S. at 25-26, 88 S.Ct. at 1882). Facts giving rise to reasonable suspicion may be supplied by information from another person. *Brother v. State,* 166 S.W.3d 255, 257 (Tex.Crim.App. 2005).

A routine traffic stop includes investigation of the suspected offense as well as a license and warrant check. *Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App. 2004). The officer may also issue a citation. *United States v. Shabazz,* 993 F.2d 431, 437 (5th Cir. 1993). Only after a computer check of the license and warrant status is completed and "the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, [is] the traffic-stop investigation fully resolved." *Kothe,* 152 S.W.3d at 63-64, 65.

Once the reason for a routine traffic stop is resolved, the stop may not then be used as a "'fishing expedition for unrelated criminal activity.'" *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 422, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring)). Rather reasonable suspicion that another offense was or is being committed is required to prolong the detention. *Lambeth v. State,* 221 S.W.3d 831, 836 (Tex.App.--Fort Worth 2007, pet. refused); *McQuarters v. State,* 58 S.W.3d 250, 256 (Tex.App.--Fort Worth 2001, pet. refused). The officer must be able to

point to specific articulable facts, which, based on his experience and personal knowledge coupled with logical inferences drawn from these facts, warrant the additional intrusion. *Davis,* 947 S.W.2d at 244. An officer is entitled to rely on all the information obtained during his contact with a motorist in developing the articulable facts justifying continued detention. *Razo v. State,* 577 S.W.2d 709, 711 (Tex.Crim.App. 1979); *Powell v. State,* 5 S.W.3d 369, 377 (Tex.App.--Texarkana 1999, pet. refused).

Generally, a sniff of the outside of a motor vehicle by a trained police dog is not a search within the meaning of the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983) (seizure on reasonable, articulable suspicion that luggage contained contraband or evidence of crime); *Crockett v. State,* 803 S.W.2d 308, 310 n.5 (Tex.Crim.App. 1991); *cf. Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005) (a canine free air sniff of a vehicle conducted during a lawful traffic stop is not offensive to the Fourth Amendment because it does not implicate any legitimate privacy interest and may, therefore, be conducted absent reasonable suspicion).

Here, as noted, appellant does not challenge the lawfulness of the officer's initial detention for the purpose of addressing her traffic violation. Nor is it disputed that the officer reasonably expanded his investigation into appellant's lack of a valid driver's license.[3]

---

[3] Nor does it appear disputed that the officers had probable cause to search her car after they observed the drug dog's alert.

6

Appellant contends, however, that once those purposes for her detention were resolved, further prolonging of the detention was unreasonable. And, she contends, the drug dog arrived some five minutes after investigation of her traffic and driver's license violations was completed. Boiled down, then, the issue presented by appellant's motion to suppress is whether the investigatory detention of appellant was improperly prolonged during the roughly five-minute period after the officers received confirmation her license was invalid but before the drug dog arrived.

The valid purposes for appellant's detention were not limited to her driving violations. More was at issue here than the traffic laws.[4] The officer's reasons for investigation start with the tip from Trocchio that Kathy Mitchell and an unidentified male were cooking methamphetamine at a particular address. On appeal, appellant acknowledges that an informant's tip may give rise to reasonable suspicion authorizing an investigative detention. *Reesing v. State,* 140 S.W.3d 732, 737 (Tex.App.--Austin 2004, pet. refused); *State v. Stolte,* 991 S.W.2d 336, 343 (Tex.App.--Fort Worth 1999, no pet.). Citing *Stolte* at 341-42 she contends, however, Trocchio's tip required corroboration because his status as an arrestee casts doubt on the reliability of his statement. She acknowledges the tip received some corroboration when the named Kathy Mitchell drove into its driveway that night while the officer was watching the residence. Appellant contends, however, that the tip regarding appellant's drug activity at that address was not further corroborated. We disagree with appellant's view of the evidence.

---

[4] In *Shabazz*, the court referred to "garden variety *Terry* stop[s]." 993 F2d at 436. The officer's detention of appellant in the driveway of her residence was not a garden variety traffic stop.

To begin with, the address Trocchio mentioned was not unknown to the officer. He testified he had previously made "numerous stops from that house . . . in reference to narcotics." Although the statement is lacking in detail, the trial court reasonably could have inferred from the testimony the address had been the site of drug activity.

And, by the time the officer completed his investigation of the failure-to-signal offense that formed the pretext for his initial detention of appellant, and his investigation of her invalid driver's license, the reasonableness of which are not challenged, the officer was in possession of additional information.

Appellant told the officer she lived at the residence. The house, she explained, was "Todd's" and she "believe[d]" his last name was "Andres." Appellant also told the officer she had "used about [every drug she] could" and had previously been arrested in a nearby town for "cocaine." But she considered herself "in recovery right now." She denied that Todd used drugs but added she had a "couple of friends" who were users.

Appellant initially told the officer she had her driver's license and proof of insurance with her. Moments later, however, she acknowledged her license was not "on me." The officer's initial records check indicated appellant's driver's license was invalid. As noted, appellant denied this fact and requested another records check.

The officer told the trial court that as appellant spoke with him, she was agitated, shaking, and very nervous. Our review of the video supports the trial court's implicit findings of these observations. The officer can be heard on the video recording telling his fellow officer that appellant "keeps moving around."

8

Reviewing the trial court's ruling, we consider the supporting facts and reasonable inferences in the light most favorable to the ruling. *Bilyeu v. State,* 136 S.W.3d 691, 694 (Tex.App.--Texarkana 2004, no pet.). So viewed, we conclude all these facts served to corroborate Trocchio's information so as to make reasonable appellant's continued detention for investigation of drug activity during the brief period of time in question here. *See Alabama v. White,* 496 U.S. 325, 329-331, 110 S.Ct. 2412, 2415-16, 110 L.Ed.2d 301 (1990) (under totality of circumstances approach, relatively unreliable tip corroborated with facts known to officers by personal observation met lesser reasonable suspicion standard justifying investigative stop). It was not unreasonable for appellant's detention to remain ongoing at the time the dog arrived, some five minutes after the traffic stop ended.

Appellant's sole issue on appeal is overruled.[5]

---

[5] The parties did not brief, and we express no opinion, whether the detention of appellant was justifiably prolonged following the completion of the traffic stop by the attachment of probable cause to arrest appellant for driving with an invalid driver's license. Section 521.457(e) of the Texas Transportation Code as it existed in August 2007, provided driving with an invalid driver's license was a misdemeanor punishable by a fine of not less than $100 or more than $500 and confinement in the county jail for not less than seventy-two hours or more than six months. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1027, § 8, 2007 Tex. Gen. Laws 3567, 3568 (amended 2009) (current version at Tex. Transp. Code Ann. § 521.457(e) (West Supp. 2010)).

## Conclusion

Having overruled appellant's issue, we conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. Accordingly, we affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.