# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-15-00490-CR
NO. 03-15-00491-CR

**Ernest Perez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-14-0133, CR-15-0145, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Ernest Perez guilty of possession of a controlled substance, methamphetamine, in an amount more than four grams but less than 200 grams, *see* Tex. Health & Safety Code § 481.115(d), and of unlawful possession of a firearm by a felon, *see* Tex. Penal Code § 46.04(a). The trial court then found two enhancement paragraphs to be true and assessed punishment in each case at 30 years' imprisonment, with the sentences to run concurrently. In two points of error, Perez challenges the trial court's denial of his motion to suppress evidence. We will affirm the judgments of conviction.

On October 30, 2013, Officer Samuel Myers of the San Marcos Police Department was dispatched to a convenience store. The dispatcher told Officer Myers that a 911 caller had alleged that a woman named Kristin Watts had previously damaged the caller's vehicle and was present at the store. According to the dispatcher, the caller had also said that Watts may have a pending arrest warrant and that she had entered a gray truck. When Officer Myers arrived, he found the gray truck Watts had allegedly entered and signaled for the driver not to leave. He was assisted at the scene by Officer Daniel Royston.

The officers spoke with the vehicle's occupants and learned that Perez was the driver while another male and Watts were passengers. As the officers walked away from the vehicle, Officer Myers told Officer Royston that Perez was a criminal gang member. Officer Myers got Watts out of the vehicle and discovered that she had pending arrest warrants, although none of those warrants was connected to the damage Watts had allegedly caused to the 911 caller's vehicle. While Officer Myers was tending to Watts, Officer Royston removed Perez and the other passenger from the vehicle and frisked them. Officer Royston then began a search of the vehicle, which eventually included the use of a canine unit. The officers discovered a handgun, various types of ammunition, illegal drugs, and drug paraphernalia. Perez was arrested, and when he was searched at the jail, officers found additional illegal drugs underneath his clothes.

After being indicted, Perez filed a motion to suppress, arguing that the initial stop of his vehicle was made without reasonable suspicion that he had committed any crime and that

---

[1] The facts recited herein are taken from the testimony and other evidence presented at trial.

the investigative detention went beyond the scope of the original stop. The trial court denied his motion, and Perez was tried and convicted. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). In a suppression hearing, the trial court is "is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007) (internal quotation marks omitted). We also give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

## DISCUSSION

In his first point of error, Perez contends that the trial court should have suppressed the results of the search of his vehicle because Officer Myers did not have reasonable suspicion to initiate the traffic stop.

"A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to

3

conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A reasonable-suspicion determination is made by considering the totality of the circumstances and applying an objective standard that disregards any subjective intent of the officer. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). "Facts giving rise to reasonable suspicion may be supplied by information from another person." *Mitchell v. State*, 342 S.W.3d 818, 821 (Tex. App.—Amarillo 2011, no pet.) (citing *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005)). This includes information from a police dispatcher. *See Arguellez*, 409 S.W.3d at 663 ("A 911 police dispatcher is ordinarily regarded as such a cooperating officer for purposes of making this [reasonable-suspicion] determination."); *Williams v. State*, No. 07-13-00425-CR, 2014 WL 2810416, at *1 (Tex. App.—Amarillo June 13, 2014, no pet.) (mem. op., not designated for publication) ("That an officer may rely on a dispatcher's knowledge when assessing whether reasonable suspicion exists warranting an investigation and detention is beyond gainsay."). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). We review the legal determination of whether there was reasonable suspicion de novo. *See State v. Mendoza*, 365 S.W.3d 666, 669 (Tex. Crim. App. 2012).

Here, Officer Myers testified that the dispatcher had given him a description of Perez's gray truck and told Myers that a 911 caller had alleged that someone in the truck had damaged the caller's vehicle and that the caller believed the person had a pending arrest warrant. The caller also witnessed Watts entering a gray truck at the convenience store. Officer Myers

4

testified that, at the time he stopped Perez's vehicle, he did not know whether a traffic accident or criminal mischief had occurred and that he stopped the vehicle to investigate the 911 caller's allegations. Although it later turned out that Watts did not have a warrant for criminal mischief, she did have other warrants out for her arrest. In any event, Officer Myers's mistaken belief that Watts might have a warrant for criminal mischief did not render his detention of the vehicle objectively unreasonable. *See Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012) ("[A] mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be."). Because Officer Myers reasonably believed that someone in Perez's vehicle had caused property damage and may have an arrest warrant, we conclude that he had reasonable suspicion to stop the vehicle. Accordingly, we overrule Perez's first point of error.[2]

In his second point of error, Perez contends that, even if the initial stop was constitutional, the officers improperly extended the detention after they had removed Watts from the vehicle and determined that Perez was not involved in the investigation of vehicle damage. *See Mitchell*, 342 S.W.3d at 822 ("Once the reason for a routine traffic stop is resolved, the stop may not then be used as a fishing expedition for unrelated criminal activity.") (citing *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)).

---

[2] In his appellate brief, Perez urges us to "prohibitively" apply the "collective knowledge doctrine." Specifically, Perez argues that the dispatcher did not rely on "any reasonably reliable data base" and did not communicate to Officer Myers that the 911 caller told the dispatcher that Watts had not been charged in connection with the alleged vehicle damage. However, Perez acknowledges that the doctrine has not been applied in this way by Texas courts, and we decline to do so for the first time. *See O'Bryan v. State*, 464 S.W.3d 875, 879 (Tex. App.—Fort Worth 2015, pet. ref'd) (describing permissive and prohibitive applications of collective knowledge doctrine).

5

Officer Royston testified that the investigation happened at night and that the vehicle in which Watts and Perez were seated had darkly tinted windows that made it difficult to see inside. He further testified that when he asked one of the passengers to roll down the window, he noticed a box of ammunition sitting in the middle of the back seat of the vehicle. According to Officer Royston, after he noticed the ammunition, he asked Watts whether there was a gun in the vehicle. Watts said that she did not know, and Officer Royston returned to the vehicle. Officer Royston testified that when he returned to the vehicle, "the box of ammunition wasn't there anymore," leading him to believe that "somebody was trying to conceal evidence of a firearm inside the vehicle."

"[R]oadside encounters between police and suspects are especially hazardous." *Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). For that reason, police may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden," if the officers reasonably believe "that the suspect is dangerous and the suspect may gain immediate control of weapons." *See Long*, 463 U.S. at 1049. Here, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the officers may have reasonably believed that there could be a weapon within reach of Perez or the male passenger. Accepting Officer Royston's testimony as true, as the trial court was entitled to do at the suppression hearing, someone in the vehicle concealed the box of ammunition, which could arouse Officer Royston's suspicion that criminal activity was afoot and that there could be a firearm inside the vehicle along with the ammunition. In addition, because the encounter happened at night and the tinted windows prevented the officers from getting a good view of the vehicle's interior, Officer Royston may have reasonably been

6

concerned that Perez or the male passenger could reach for a firearm without being seen. Finally, we note that Officer Myers had told Officer Royston that Perez was a member of a criminal gang.[3] Because the officers could have reasonably believed that Perez was dangerous and may have had access to a firearm, we conclude that the continuation of Perez's detention for a protective search for firearms was constitutional. Accordingly, the trial court did not abuse its discretion in denying Perez's motion to suppress, and we overrule Perez's second point of error.

## CONCLUSION

Having overruled Perez's points of error, we affirm the trial court's judgments of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: July 27, 2016

Do Not Publish

---

[3] Perez points to a defense exhibit consisting of an email from an investigator stating that Perez was not a confirmed or suspected criminal gang member. However, Perez has not explained how this exhibit demonstrates that it was unreasonable for Officer Myers to believe that Perez was a gang member or for Officer Royston to rely on Officer Myers's statement to that effect.