

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CORNELIOUS L. MATTHEWS, | § | No. 08-11-00157-CR |
| Appellant, | § | Appeal from the |
| v. | § | 297th District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1166605D) |
| | § | |

**O P I N I O N**

Appellant appeals the trial court's denial of his motion to suppress evidence.[1]   We affirm.

**BACKGROUND**

After an anonymous person made a police report specifying that a black male named "Neil Matthews," who was wearing a white muscle shirt and black pants and was presently selling "crack" from a white van, Fort Worth Police Officers Michael Zimpelman and Eric Smith were dispatched at 11:11 p.m. to the reported location, a high-crime and high-drug area where officers have responded to other calls reporting persons selling "anything from marijuana to crack cocaine."   Upon arrival, Officer Zimpelman corroborated the information in the report regarding

---

[1]  As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

a white van at the location which was occupied. The officers parked their police vehicle behind the van for officer safety because of a possibility that someone was selling crack from the van. Officer Zimpelman knew that persons "that do that" also carry weapons.

Officer Zimpelman approached the van, looked in the passenger-side window, and observed a black male, later identified as Appellant, sitting in the driver's seat of the van and wearing the clothing described in the anonymous report. Officer Zimpelman approached the vehicle and spoke with Appellant through the rolled-down window. Noticing that Appellant only had his right hand on the steering wheel and had his left hand concealed, he became more concerned that Appellant may be involved in drug activity and possibly in possession of weapons. Officer Zimpelman directed Appellant to show his left hand but Appellant simply looked at the officer and then looked forward without complying with the directive. When Officer Zimpleman repeated his directive, Appellant stated he was complying with the directive but, according to Officer Zimpelman, Appellant was non-compliant. This concerned Officer Zimpelman because, based on his training and experience, if someone is not doing something wrong, they will comply with verbal commands and he was also concerned that Appellant may have a weapon in his non-visible hand. Due to the time of evening, the high-crime location, and the corroboration of the reported information by the officers' own observations at this point, Officer Zimpelman believed that it was possible that crack was being sold and that Appellant may be in possession of a weapon. For their safety, Officer Smith conducted a *Terry* frisk to check for weapons.

After finding no weapons, Officer Zimpelman asked Appellant for his consent to search the van. Appellant disavowed ownership of the van and stated that he could not consent to a search of the vehicle. Although Appellant also asserted that he could not permit officers into the

2

vehicle because he did not have the keys to it, Officer Zimpelman looked in the vehicle and informed Appellant that he did not have the keys because they were in the vehicle's ignition. When Officer Zimpelman then requested the assistance of a canine unit, Appellant became nervous and exhibited an increase in the frequency of his breathing. The officers explained to Appellant that they were going to walk him over to the patrol car and detain him for further investigation. As Officer Zimpelman turned to walk to his patrol car, he heard footsteps and Officer Rodriguez calling out, and when he turned, Officer Zimpelman saw Appellant fleeing on foot. Officers pursued Appellant, who relented only after Officer Zimpelman announced that he would deploy a taser cartridge if Appellant did not stop running. Officers then handcuffed Appellant. Canine Officer Hutch subsequently signaled an alert after conducting an open-air sniff of the exterior of the van, in which the officers found marijuana and cocaine. Appellant was charged with two counts of possession of cocaine.

Appellant filed a pro se motion to suppress the evidence, contending it was illegally seized because the van had been loaned to him by a friend and he was handcuffed in the back of a patrol car at the time of the warrantless search. Appellant's counsel also sought to suppress the evidence seized from the warrantless search of the automobile because there was no probable cause to search the vehicle, the search "exceeded that authorized by law for a warrantless search" and "was not the result of a valid consent by [Appellant]."

At the hearing, in addition to the foregoing, Officer Zimpelman testified that after Appellant twice contended that he was without authority to consent to the search because he did not own the van, Officer Zimpelman verified through a registration check that the vehicle was registered to another person. Appellant testified that he told officers that he could not let them

3

search the van because it did not belong to him and that he had the owner's permission to borrow the vehicle so that his aunt could take him home and then return the car to the owner. The trial court denied Appellant's motion.

## DISCUSSION

In his sole issue, Appellant contends that the trial court's application of the law on the issue of Appellant's standing is erroneous and that his detention was not in compliance with constitutional principles. The State asserts Appellant has waived any error as he has presented two distinct complaints in his sole issue, rendering it multifarious.

### *Multifarious Issue*

An issue or point of error is multifarious if it embraces more than one specific ground of error. *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). By combining independent grounds together in a single issue, an appellant risks rejection of his arguments on the basis that nothing has been presented for review. *See Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000) (refusing to address multifarious grounds). While each embraces constitutional considerations, a complaint that the trial court erred in determining Appellant is without standing to challenge the constitutionality of a search of property is distinct from a complaint that an officer was without reasonable suspicion to justify an investigative detention. Consequently, we conclude Appellant's issue is multifarious.

Appellate courts have discretion to address multifarious issues and often do so provided the contentions are adequately briefed. As an appellate court, it is not our task to comb through the record in an effort to verify an appellant's claims. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995). Nor are we obligated to construct and compose an appellant's issues,

4

facts, and arguments for him. *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008).

We will address Appellant's standing complaint as we find it to be adequately briefed.

*Standing*

Appellant contends the trial court erroneously concluded that he was without standing because his testimony at the suppression hearing established that he was in the vehicle with the owner's permission. The State counters that the trial court did not err because Appellant is without standing to challenge the search of the van.

The Fourth Amendment of the U.S. Constitution and Article I, Section 9 of the Texas Constitution protect individuals from unreasonable searches and seizures. U.S. CONST. amend IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203-205 (Tex. Crim. App. 2013); *Richardson v. State,* 865 S.W.2d 944, 948 (Tex. Crim. App. 1993). To assert a challenge to a search and seizure under the United States and Texas Constitutions and article 38.23 of the Texas Code of Criminal Procedure, a party must first establish standing. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *Kothe v. State,* 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Martinez v. State*, 236 S.W.3d 361, 367 (Tex. App. – Fort Worth 2007, pet. dism'd). The rights secured by the Fourth Amendment and Article I, Section 9, are personal, and accordingly, an accused has standing to challenge the admission of evidence obtained by an "unlawful" search or seizure only if he had a legitimate expectation of privacy in the place invaded. *Betts*, 397 S.W.3d at 203; *Rakas v. Illinois,* 439 U.S. 128, 139, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Richardson,* 865 S.W.2d at 948–49. When challenging a search, the defendant has the burden of proving facts demonstrating a legitimate expectation of privacy. *Betts*, 397 S.W.3d at 203; *Villarreal,* 935 S.W.2d at 138. He must show

5

that he had a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable. *Betts*, 397 S.W.3d at 203; *Villarreal,* 935 S.W.2d at 138; *see Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

In considering whether a defendant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including whether:   (1) the accused had a property or possessory interest in the place invaded; (2) he was legitimately in the place invaded; (3) he had complete dominion or control and the right to exclude others; (4) before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy.  *Betts*, 397 S.W.3d at 203-204; *Granados v. State,* 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *Villarreal,* 935 S.W.2d at 138.   This list of factors is non-exhaustive, and no one factor is dispositive.  *Granados,* 85 S.W.3d at 223.   We defer to the trial court's factual findings and view them in the light most favorable to the prevailing party. *Kothe,* 152 S.W.3d at 59.   However, we review the legal issue of standing *de novo*.   *Id.*

Appellant asserts that having the owner's permission to be in the vehicle provides him with standing.   This assertion, however, fails to establish that the owner had given Appellant continued permission to use the vehicle or that Appellant had an ownership or possessory interest in the vehicle or otherwise had a reasonable expectation of privacy in it.   There is no evidence that Appellant had complete dominion or control over the vehicle and the right to exclude others from it.   There is no evidence that Appellant took normal precautions customarily taken by those seeking privacy.   The owner's grant of permission to Appellant to be in the vehicle does not rise

6

to a claim of privacy consistent with historical notions of privacy. Because Appellant has not satisfied his burden of proving facts demonstrating a legitimate expectation of privacy of the place searched, we conclude the trial court correctly determined Appellant is without standing to challenge the search of the vehicle and the admission of the contraband found during the search. *See Betts*, 397 S.W.3d at 203; *Rakas* 439 U.S. at 139; *Villarreal,* 935 S.W.2d at 138.

## *Investigative Detention*

We understand Appellant to also complain that the anonymous report specifying Appellant by name as the person dealing "crack" from a white van at the specified location was insufficient to establish the requisite reasonable suspicion necessary to justify an investigative detention. Appellant asserts that he "should have been left alone," that "[a]ll of these actions violated [his] right to be free from unlawful seizure," that he has "legal standing to contest all of the detentions and seizures . . . by being in lawful possession of a borrowed vehicle," and that "upon receiving [the] tip, Officer Zimpelman was going to search the van, one way or another." We will address this argument to the extent we understand it.

## *Reasonable Suspicion*

Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citations omitted); *see also, United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause") (internal quotation marks omitted). A police officer has reasonable suspicion to detain a person if

he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler*, 348 S.W.3d at 914; *see Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigative detention, and "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate") (internal quotation marks omitted). This objective standard disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *See Terry,* 392 U.S. at 21–22. It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *See United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account"); *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *Sokolow,* 490 U.S. at 9–10; *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts." *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

A detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating

8

officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler*, 348 S.W.3d at 914 (citations omitted). A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.*

Information provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable. *Id.* at 915 (citations omitted). The only question in that scenario is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *See Cf. Texas v. Brown,* 460 U.S. 730, 742–43, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (an officer's knowledge, experience, and training are relevant in determining whether he had probable cause to believe the item he observed in plain view constituted contraband). Both the content of the information possessed by the police and its degree of reliability must be taken into account in determining whether a detention is reasonable. *See Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The United States Supreme Court has adopted the totality of the circumstances test when considering an anonymous tip and has declared that while an anonymous tip, standing alone, lacks the necessary indicia of reliability, where officers are able to verify or corroborate significant aspects of an informant's report, reasonable suspicion may exist to make an investigatory stop. *White*, 496 U.S. at 325. Reasonable suspicion can arise from information that is less reliable than that required to establish probable cause. *Id.* at 330.

An officer may rely on information received from a citizen, rather than his direct observation, so long as the citizen's statement is reasonably corroborated by other matters within

9

the officer's knowledge. *Brother v. State,* 166 S.W.3d 255, 258–59 (Tex. Crim. App. 2005), *cert. denied,* 546 U.S. 1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); *Turley v. State,* 242 S.W.3d 178, 181 (Tex. App. – Fort Worth 2007, no pet.); *State v. Sailo,* 910 S.W.2d 184, 188–89 (Tex. App. – Fort Worth 1995, pet. ref'd) (citing *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983)).   However, "corroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Sailo,* 910 S.W.2d at 189.   Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *See Brother,* 166 S.W.3d at 259 n.5; *Sailo,* 910 S.W.2d at 189.   Where the reliability of information is increased, less corroboration is necessary. *Pipkin v. State,* 114 S.W.3d 649, 654 (Tex. App. – Fort Worth 2003, no pet.); *State v. Stolte,* 991 S.W.2d 336, 341 (Tex. App. – Fort Worth 1999, no pet.).   Where a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. *Stolte*, 991 S.W.2d at 341.

After being dispatched, officers verified that a white van was at the location given by the anonymous tipster and that Appellant, as named by the tipster, was sitting in the white van and wearing the described clothing.   In addition to having this corroborated information, the officers were aware that the location was known as a high-crime, high-drug area, and that persons who sell drugs from vehicles are sometimes armed with weapons.   After making verbal contact with Appellant through an open window of the van that night, officers were confronted with Appellant's repeated refusal to show both of his hands as they attempted to speak with him.

10

Although officers determined that Appellant did not have weapons or drugs on his person, the other facts known to the officers by personal observation increased the indicia of reliability of the anonymous tip. Under the totality of the circumstances, we conclude the officers had reasonable suspicion to detain Appellant because they had specific, articulable facts that, combined with rational inferences from those facts, would lead them to reasonably conclude that Appellant was, had been, or soon would be engaged in criminal activity. *Derichsweiler*, 348 S.W.3d at 914. Appellant's issues are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

August 23, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)

11